IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Krystal Cheatham, | : | |
| | : | Case No. 1:14-cv-388 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Denying Defendant's Motion for |
| Cedar Fair L.P., et al., | : | Summary Judgment |
| | : | |
| Defendants. | : | |
| | : | |

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 23). Plaintiff opposes the Motion. For the reasons the follow, Defendant's Motion for Summary Judgment will be denied.

I.  **BACKGROUND**[1]

A.  **Facts**

This 42 U.S.C. § 1983 civil rights action arises from Plaintiff Krystal Cheatham's visit to Kings Island amusement park on July 20, 2013. On that day, Plaintiff was a guest at Kings Island. While Plaintiff was near the entrance to Kings Island, eight-year-old, P.W., bumped into Cheatham's right leg. Cheatham then struck P.W. in the face with her hand. (Cheatham Dep. 22, Doc. 25-1 at PageID 195.) There is no dispute the blow left a red handprint on P.W.'s face that was still visible when Kings Island Park security/police officers[2] arrived shortly after the incident. The incident was witnessed by Plaintiff's two companions, Pablo Rodriguez and Chris Hutchinson, P.W.'s father, and security officer Elayna Sleesman.

---

[1] Except as otherwise indicated, background facts are drawn from Defendant's Statement of Undisputed Facts (Doc. 23-1 at PageID 98–102) to the extent those facts are admitted in Plaintiff's response thereto (Doc. 32 at PageID 426–29). Where the parties do not explicitly agree on any statement of fact, the Court cites to the portion of the record providing support for the statement.

[2] At the hearing on this matter, counsel for Defendant clarified that security officers do not have law enforcement training, whereas park police officers have some amount of law enforcement training, although the extent of that training is unclear.

After the incident, Mr. Rodriguez and P.W.'s father began yelling at each other. As a result, Ms. Sleesman called for assistance from Kings Island Park officers. Thomas Brill, Adam Featherling, and Joshua Ginn responded to the scene and helped escort those involved to the Kings Island security office. Cheatham and her companions were placed in a conference room and each filled out a written statement of the incident. P.W., her mother, father, brother, and sister were placed in a separate conference room and asked to fill out one report describing the incident, which P.W.'s father signed.

Charles Harbin, a member of the Kings Island Park Police, was the desk officer on duty at the time of the incident. Officer Harbin was responsible for gathering information about the incident and deciding whether there was probable cause to arrest Cheatham. Officer Harbin investigated by obtaining written statements from Cheatham, Mr. Rodriguez, Mr. Hutchinson, and P.W.'s family.

In her statement, Ms. Cheatham described:

> I was walking & talking to my buddies & I didn't see this little girl walking, she had trip me while I was walking. I almost fell & when I was about to fall, I was trying to grab on something I accident[ly] hit the little girl. This reaction is called fight-or-flight when [sic] your about to fall. I apologize[d] to the dad, then he was saying "are you fucking stupid." I keep apologizing to the man & he kept calling me a stupid bitch. Chris said "she said sorry, she didn't mean it.["] Then the security guard lady said I seen everything. She told me & buddies it was OK & we go ahead.

(Doc. 24-1 at PageID 169.)

Mr. Rodriguez's statement asserts:

> We was Just walking and it was a mistake my Girlfriend smack the girl. And he was calling my girl name so I just tell him why you calling your name. [A]nd it was all a mistake.

(Doc. 24-1 at PageID 168.)

Mr. Hutchinson's statement says:

2

> Krystal, Pablo & I walk out the store. I almost bump into the father of the child but I let him pass. Krystal was still walking and the little girl came out of [sic] no where and trip Krystal to fall. She was trying to find her balance in so she accidentally hit the girl. The father started yelling at us and Krystal. At the same time Krystal was repeating over saying sorry. Pablo over reacted by [sic] throughing the drink to the ground, and we all walk off. Now I [sic] hear writing this out.

(Doc. 24-1 at PageID 167.)

Officer Harbin then summarized all the statements in his own written report.[3] In his report, he asserted that security officer Sleesman, who had prepared a written report of the incident, "stated that the juvenile female ran into the backside of the older adult [Cheatham] at which time the adult turned and slapped the juvenile with an open hand on the right side of her face." (Doc. 24-1 at PageID 170.) He notes that "[o]ne of the male adults then started to exchange words with the victim's father. The male adult then threw down his souvenir cup. Other park security and park police officers then arrived to her call for help. All parties [sic] where then escorted back to the office by Police Officers Featherling, Ginn and Brill." (*Id*.)

Office Harbin documented the fact that photos of P.W.'s injuries were taken both in the security office and at the front gate by Officer Brill. He recorded the fact that Cheatham's statement "stated that the little girl had tripped her and she almost fell. Trying to keep from falling, she reached back for something to grab and hit the little girl in the face." (*Id.*) He stated that Mr. Hutchinson, "stated that the little girl tripped Krystal and in regaining her balance Krystal reached back and struck the little girl by accident." (*Id*.) He quoted Mr. Rodriguez's statement that "it was a mistake and my girlfriend smack the girl." (*Id.*)

Officer Harbin also summarized P.W.'s father's statement: "[P.W.'s father] stated that they were walking out of the exit when the adult female walked in front of [P.W] causing [P.W.]

---

[3] The parties did not cite, nor was the Court able to readily locate, a copy of P.W.'s family's statement or security officer Sleesman's statement in the record.

3

to trip. The lady then turned around and slapped [P.W.]. He stated that he confronted the lady about the incident and that her 'husband' then threw his stuff on the ground and got into Shaun's face." (*Id.*) Officer Harbin also spoke with security officer Sleesman and some of the other officers who responded to the scene of the incident. He did not review video surveillance of the incident, nor did he review video surveillance of the parties involved filling out their witness statements at the Kings Island security office. Officer Harbin concluded that there was probable cause to arrest Cheatham for assault.

Cheatham was arrested, transported to the Warren County jail, and charged with assault in violation of § 537.03(a) of the Mason Municipal Code and spent Saturday night, Sunday, and Sunday night in jail before her initial appearance on Monday morning. Cheatham's criminal case in the Mason Municipal Court was assigned case no. 13CRB00732. In the state court criminal proceeding, Cheatham filed a Motion to Suppress/Dismiss, arguing her constitutional rights had been violated because Kings Island lacked probable cause to arrest her. (Motion, Doc. 23-3.) The court rejected this argument and held the officer had probable cause to arrest. (Entry, Doc. 24-3.) Later, on March 14, 2014, the Mason Municipal Court dismissed the criminal charges against Cheatham upon agreement of the parties.

**B.    Procedural History**

On May 13, 2014, Plaintiff filed the instant action against Cedar Fair, L.P. d/b/a Cedar Fair Entertainment, Inc., d/b/a Kings Island ("Kings Island"), Curt Van Wagner, in his official capacity, and Elayna Sleesman, Charles Harbin, Thomas Brill, Joshua Ginn, and Adam Featherling in their official and individual capacities. In the Complaint, Plaintiff alleges Fourth and Fourteenth Amendment violations, supervisorial responsibility for the violations of Plaintiff's civil rights, negligence, false arrest and false imprisonment, intentional infliction of

4

emotional distress, and negligent infliction of emotional distress. Plaintiff seeks compensatory damages, punitive damages, reasonable attorney's fees, prejudgment interest, costs, and other relief deemed appropriate by the court.

On July 11, 2014, Defendants filed a Motion to Dismiss, which the Court denied (Doc. 3, 11.) Thereafter, on February 17, 2015, the Court granted Plaintiff's Notice of Voluntary Dismissal Without Prejudice of All Claims Against Individual Defendants Only and Emotional Distress Claims Against All Defendants. (Doc. 20.) On April 30, 2015, Defendant Kings Island filed the Motion for Summary Judgment now pending before the Court. (Doc. 23.) On July 9, 2015, the Court held a hearing on the Motion and took the matter under advisement.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of showing that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 585–87; *Provenzano*, 663 F.3d at 811.

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported

5

motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

### III.  ANALYSIS

Defendant moves for summary judgment on all remaining claims on the basis that Officer Harbin had probable cause to arrest Plaintiff for assault.  The only claims remaining against the Defendant are a § 1983 claim, negligence claim, and a false arrest/false imprisonment claim.  At the hearing and throughout their briefs on this matter, the parties agreed that there is no dispute that whether Officer Harbin had probable cause to arrest Cheatham is dispositive of all of Plaintiff's claims.[4]

Plaintiff asserts Defendant is liable under § 1983 for violations of Plaintiff's Fourth and Fourteenth Amendment rights under a failure to train theory.  To establish a claim under 42 U.S.C. § 1983, the plaintiff must prove that "(1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001).

As an initial matter, Plaintiff fails to allege any constitutional deprivation independent of the Fourth Amendment claim.  To the extent that she meant to allege a violation of her

---

[4] A plaintiff bringing a constitutional claim of false arrest under the Fourth Amendment must show there was not probable cause for the arrest; the existence of probable cause forecloses the false arrest claim. *Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir. 1997).  Where probable cause exists to arrest, a negligence claim based upon that arrest fails as a matter of law. *Wolford v. Sanchez*, No. 05CA008674, 2005 WL 3556681, at *7 (Ohio Ct. App. Dec. 30, 2005).  Finally, an arrest based on probable cause forecloses false arrest and false imprisonment claims under Ohio law. *Frazier v. Clinton County Sheriff's Office*, No. CA2008-04-015, 2008 WL 4964322, at *4 (Ohio App. Ct. Nov. 24, 2008) (citing *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 315 (6th Cir. 2005)).

substantive due process rights, the Supreme Court has previously made clear that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of governmental behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Manley v. Paramount's Kings Island*, No. 1:06-CV-634, 2007 WL 4083260, at *8 (S.D. Ohio Nov. 15, 2007) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). As Plaintiff agrees that probable cause is determinative of all of her remaining claims, the Court is further guided that there is no independent basis for her Fourteenth Amendment claim. Accordingly, Plaintiff's constitutional claims fall squarely within the Fourth Amendment. Thus, Plaintiff's § 1983 claims necessarily fail to the extent that they are based on an alleged deprivation of rights secured under the Fourteenth Amendment.

Plaintiff does not name any local government or governmental agency as a defendant in this action; rather, only private employer, Kings Island, remains as a defendant. A private entity on its own cannot deprive a citizen of his constitutional rights under § 1983. *Manley*, 2007 WL 4083260, at *6. However, a private party is considered a state actor under § 1983 where his conduct is "fairly attributable to the state." *Id.* at 879 (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)). Private officers may be considered to be acting under color of state law where they are commissioned by the state. *See Nerswick v. CSX Transp., Inc.,* 692 F.Supp.2d 866, 879 (S.D. Ohio 2010), *aff'd,* 441 Fed. App'x 320 (6th Cir. 2011) (finding employees of a private corporation amenable to suit under § 1983 where the defendants were appointed and commissioned to act as police officers pursuant to Ohio Rev. Code § 4973.17 and were performing police powers traditionally reserved to the state).[5]

---

[5] The Court does not rule on the issue of whether the Defendant's police officers and/or security guards were acting under color of law in this instance. The issue was raised by the Court and briefly addressed by the parties at the

Furthermore, "[t]he issue of whether an employer can be held liable under § 1983 for the actions of an employee usually arises in the context of municipal liability for the acts of its employees. A municipality cannot be held liable under § 1983 on the basis of respondeat superior liability." *Nerswick v. CSX Transp., Inc.,* 692 F. Supp. 2d 866, 878 (S.D. Ohio 2010), *aff'd,* 441 F. App'x 320 (6th Cir. 2011) (citing *Monell v. Dept. of Social Serv.,* 436 U.S. 658, 691 (1978)). "Rather, in order to be held liable for a constitutional violation, the municipality's policy must be the 'moving force' behind the violation." *Id.* (citing *City of Canton v. Harris,* 489 U.S. 378, 389 (1989)). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* (citing *Canton*, 489 U.S. at 389.) "These same principles apply to a private corporation which is sued under § 1983 on a respondeat superior or vicarious liability theory." *Id.* The Defendant here argues that there was probable cause to arrest; the parties do not address what they consider a secondary issue of whether there was an alleged failure to train. Accordingly, as the parties agree the issue of probable cause is dispositive, the Court will solely consider that issue.

The probable cause inquiry turns on whether the "facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979). *See also Radvansky v. City of Olmstead Falls,* 395 F.3d 291, 305 (6th Cir. 2005) (an officer has probable cause when he discovers reasonably reliable information that a suspect has committed a crime). A reviewing court must assess the

---

hearing on Defendant's Motion for Summary Judgment; however, there is no record of the authority under which the officers at Kings Island are commissioned, and the parties did not brief this issue. The Court anticipates this issue will be more fully addressed, to the extent necessary, in pretrial briefs and/or in jury instructions.

existence of probable cause "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Klein v. Long,* 275 F.3d 544, 550 (6th Cir. 2001) (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)).

"Probable cause depends on the reasonable conclusion[s] to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle,* 540 U.S. 366, 371 (2003)). "[P]robable cause exists when the police have 'reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *Gardenhire v. Schubert,* 205 F.3d 303, 315 (6th Cir. 2000) (citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964)). "The analysis takes into account the totality of the circumstances, and the standard does not require the more exacting precision of the beyond a reasonable doubt or the preponderance of the evidence standards." *Legenzoff v. Steckel,* 564 Fed. App'x 136, 142 (6th Cir. 2014).

In this case, there is no dispute that Cheatham's hand made contact with P.W.'s face. As Officer Harbin confirmed in his deposition, the purpose of his investigation into the incident was to determine whether there was evidence that the contact was intentional. (Harbin Dep. at 25, Doc. 24-1 at PageID 139.) In the course of his investigation, Officer Harbin considered witness statements, statements by other officers who did not witness the incident but responded to the scene, and the red handprint on P.W.'s face.

Defendant asserts that the eyewitness accounts provided sufficient evidence of probable cause to support Cheatham's arrest for assault. *See, e.g., Legenzoff,* 564 Fed. App'x at 142 (an eyewitness identification and accusation, by itself, is sufficient to establish probable cause); *Ahlers v. Schebil*, 188 F.3d 365, 371–72 (6th Cir. 1999) (same). In this case, Officer Harbin considered the statements of Cheatham, her two companions, P.W.'s father, and security officer

9

Sleesman. Cheatham asserted the contact was accidental, as did her companions. By contrast, according to Officer Harbin's summary, P.W.'s father asserted that Cheatham turned around and slapped his daughter after his daughter caused her to trip. (Doc. 24-1 at PageID 170.) In his report of the incident, Officer Harbin stated that the other eyewitness, security officer Sleesman, described that Plaintiff "turned and slapped the juvenile with an open hand on the right side of her face." (*Id.*)

While eyewitness accounts may be sufficient evidence to establish probable cause, the Court finds there are issues with credibility and reliability with the eyewitness accounts in this case that preclude the Court from finding probable cause to arrest existed. For example, Plaintiff, Plaintiff's companion, and P.W.'s father were involved in a heated exchange following the incident and prior to giving written statements that raise questions about the reliability of those statements. Furthermore, security officer Sleesman's statement, upon which Officer Harbin relied, is not in record. However, according to Officer Harbin, it did not explicitly state that the contact made by Cheatham to P.W. was intentional. (Harbin Dep. at 22, Doc. 24-1 at PageID 136.)

Except for those instances where there is "only one reasonable determination possible," a probable cause determination is generally a question for the jury. *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir. 1995)). The evidence presently before the Court does not demonstrate this is a clear-cut determination. Rather, construing the evidence in the light most favorable to the Plaintiff, as the Court must do at this stage, questions of material fact render the probable cause determination one for the jury. Accordingly, Defendant's Motion for Summary Judgment is denied.

## IV. CONCLUSION

The Court, having reviewed the parties' pleadings and in accordance with the reasons stated herein, denies Defendant's Motion for Summary Judgment (Doc. 23).

IT IS SO ORDERED.

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court
